IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING

MARY ANN DUNOPE,

    Plaintiff,

v.

Civil Action No. 5:13-CV-58
(Bailey)

ARCELORMITTAL STEEL,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

### I. Introduction

Currently pending before this Court is defendant ArcelorMittal Steel's ("ArcelorMittal" or "the defendant") Motion to Dismiss [Doc. 12] the plaintiff's Complaint in its entirety.  This motion has been fully briefed by the defendant, but the *pro se* plaintiff has failed to respond to the Motion to Dismiss [*Id.*].[1]  Therefore, this motion is now ripe for decision.  This Court has reviewed the record and the motion and, for the reasons set out below, finds that ArcelorMittal's motion should be **GRANTED**.

### II. Factual and Procedural History

This action arises from the 2004 termination of Ms. Mary Ann Dunope's ("the plaintiff") employment from Weirton Steel, when International Steel Group ("ISG") bought out Weirton Steel [Doc. 1 at 2].  The *pro se* plaintiff filed her Complaint on April

---

[1] On May 29, 2013, Magistrate Judge James E. Seibert issued a **Roseboro** Notice [Doc. 14] informing the *pro se* plaintiff of her right to file a responsive pleading.  The docket reflects that the plaintiff accepted service of the notice on May 31, 2013.  *See* Doc. 15.

30, 2012 [Doc. 1]. The plaintiff notes, and the Court agrees, that it properly has jurisdiction to hear this claim "pursuant to Section 107 of the Americans with Disabilities Act, 42 U.S.C. § 12117(a), incorporating by reference Section 706 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e); the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a); 28 U.S.C. §§ 1131, and 1343(a); and this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367" [*Id.* at 1].

The plaintiff was employed by Weirton Steel Corporation from 1978 to 2004, primarily in office jobs [Doc. 1 at 2; Doc. 13 at 2]. By memorandum dated March 5, 2004, the plaintiff was offered participation in a Transition Benefit Program immediately after ISG completed a "purchase of Weirton Steel's assets" [Doc. 1 at 2; Doc. 13 at 3]. Participation in the program would have allowed the plaintiff to receive a lump sum payment of "over $30,000 if she had elected the Transition Benefit offered by ISG" [Doc. 1 at 3–4; Doc. 13 at 3; Doc. 13-1].[2] "The plaintiff refused the Transition Benefit (buyout) in 2004 and on subsequent occasions" thereafter [Doc. 1 at 8; Doc. 13 at 3]. The plaintiff then asserts that she "received a second memorandum from ISG, dated March 31, 2004, indicating that 'those expected to be immediately employed will subsequently be required to complete a drug screen; complete pre-employment paperwork, e.g. an employment application, Form I-9, Form W-4, etc.; and take a post offer physical exam'" [Doc. 1 at 3].

---

[2] The defendant attached a copy of the Transition Benefit Memorandum [Doc. 13-1] as Exhibit A to its Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss [Doc. 13]. An examination of that memorandum reveals that the plaintiff likely stood to receive at least $37,500 for her twenty-six years of work at Weirton Steel, given that she was employed there from 1978 until 2004 [*See* Doc. 13-1 at 2; Doc. 1 at 2].

2

The plaintiff's employment status with ISG in the period immediately after those memoranda were dispatched is unclear. The plaintiff does not specifically allege that she was offered employment by ISG, but implies that she was.[3] The defendant alleges that the "plaintiff was never actually employed by ISG or (ArcelorMittal)," and "received, at most, a non-specific offer of employment from ISG in 2004." [Doc. 13 at 4, *citing* Doc. 1 at ¶ 11].

The plaintiff alleges that ISG's first discriminatory act took place on April 19, 2004 [Doc. 1 at 3]. The plaintiff filled out an ISG employment application that "ask(ed) disabled applicants to 'list and describe limitations,'" which, she contends, is a per se violation of the Americans with Disabilities Act ("ADA") [*Id.*]. Next, the plaintiff contends that "subsequent to passing the post-offer physical exam in 2004, (she) met with two of ISG's Managers, Korbel and Robicky" [*Id.*]. The plaintiff avers that "Manager Korbel told her that she would be put to work if she dropped her handicap classification," which was "witnessed by Union President Mark Glyptis" [Doc. 1 at 4]. The plaintiff alleges that because ISG never rescinded this request, the act constitutes a continuing violation of the ADA [*Id.*].

The plaintiff claims that at some point in 2004, presumably after the other alleged acts of discrimination took place, the defendant placed her on a "Preferred Hire List" but put "Disapproved" next to her name [Doc. 1 at 5]. The plaintiff contends that her "Disapprov(al)" stems from ISG's awareness of the plaintiff's "on-going ADA lawsuit

---

[3] In paragraph eleven of the Complaint, the plaintiff indicates that she "passed ISG's drug screen and the post-offer physical exam." Additionally, in paragraph seventeen, the plaintiff notes that the "Defendant did not indicate to [the p]laintiff that the offer of employment to her in 2004 had been disapproved or withdrawn" [Doc. 1 at 3].

against Weirton Steel Corporation for disability discrimination" [*Id.*]. Further, the plaintiff argues that she was placed on a no-hire list as of 2011 in retaliation for prior legal actions, and that the defendant has hired others for positions for which she applied who have less experience [Doc. 1 at 5–6].

The plaintiff claims that throughout the time that the other alleged discriminatory acts took place, "the defendant (also purportedly) did not engage in an interactive process with plaintiff regarding her ADA disability" [Doc. 1 at 3] for several reasons: (1) the plaintiff claims that she was not "sent to any other physician" after passing a post-offer physical exam [Doc. 1 at 3]; (2) "the defendant never notified the plaintiff that it had modified its employment application, so that applicants don't have to list their disability" [Doc. 1 at 5]; (3) the defendant "never notified the plaintiff that it had withdrawn the offer of employment made to (her) in connection with the post-offer physical exam" [*Id.*]; (4) "the defendant (did not notify) the plaintiff that she was incapable of working anywhere except an office environment" [*Id.*]; (5) the defendant "never notified the plaintiff that she was incapable of working anywhere except an office environment" [*Id.*]; (6) the defendant "never notified the plaintiff that the Preferred Hire List was eliminated" [*Id.*]; and finally (7) "the defendant has had numerous office openings" and has not interviewed the plaintiff or "asked for updates on her physical limitations" since 2004 [Doc. 1 at 6].

The plaintiff does not claim that she took any specific action to inquire about her employment prospects between the alleged employment offers of 2004 and 2010. The plaintiff does, however, allege that she sent written notice on December 23, 2010 and February 3, 2011 to Susan Falbo, Manager of Labor Relations for defendant

4

ArcelorMittal, asking that she be restored to employment in a "dust-free environment" [Doc. 1 at 6].  The defendant alleges it did not reply to those requests until April 21, 2011, at which time the plaintiff was informed that the "Preferred Hire List" was eliminated in 2008 [Doc. 1 at 7].  As part and parcel of these relatively recent allegations, the plaintiff alleges that the "defendant did not respond to the plaintiff's May 5, 2011 bid or set up any kind of interactive process for the plaintiff" [Doc. 1 at 8].

Defendant ArcelorMittal Steel responded to the plaintiff's Complaint on May 28, 2013, by way of a Fed. R. Civ. P. 12(b)(6) motion to dismiss the plaintiff's Complaint in its entirety [Docs. 12 and 13].  The defendant argues that most of the plaintiff's claims are time barred, that the plaintiff has failed to state a continuing violation to toll the limitation period, and that the remainder of her arguments fail to state a claim for which relief can be granted [*Id.*].  In addition, the defendant contends that the plaintiff is "unable to show a plausible entitlement to relief with her limited 'timely' allegations as required under the **Iqbal** and **Twombly** pleading standards" [Doc. 12].

On May 29, 2013, United States Magistrate Judge James E. Seibert mailed the plaintiff a **Roseboro** Notice to advise the plaintiff of her right to file responsive material [Doc. 14].  The docket reflects that the plaintiff accepted service of the notice on May 31, 2013 [Doc. 15].  Nevertheless, the plaintiff failed to respond to the defendant's Motion to Dismiss [Docs. 12 and 13].

### III. Applicable Law

When reviewing a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.' **Bell Atl. Corp. v. Twombly**, 550 U.S. 554, 564 (2007) (emphasis added)." **Giarratano v. Johnson**, 521 F.3d 298,

5

302 (4th Cir. 2008). In other words, the plaintiff must "allege facts sufficient to state all the elements of her claim" to survive a motion to dismiss for failure to state a claim. **Bass v. E.I. Dupont de Nemours & Co.**, 324 F.3d 761, 765 (4th Cir. 2003) (citing **Dickson v. Microsoft Corp.**, 309 F.3d 193, 213 (4th Cir. 2002)); see also **Iodice v. United States**, 289 F.3d 270, 281 (4th Cir. 2002). Further, the Court must assume all of the allegations to be true, must resolve all doubts and inferences in favor of the plaintiff, and must view the allegations in a light most favorable to the plaintiff. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999). In accepting factual allegations as true, however, the Court must not accept "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." **Ashcroft v. Iqbal**, 556 U.S. 662, 663 (2009). Any "bare assertions devoid of further factual enhancement" are not considered "well-pled" for Rule 12(b)(6) purposes. **Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.**, 591 F.3d 250, 255 (4th Cir. 2009) (citing **Iqbal**, 556 U.S. at 681.). When rendering its decision, the Court should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice. **Anheuser-Busch, Inc. v. Schmoke**, 63 F.3d 1305, 1312 (4th Cir. 1995) (relying on 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357) (3d ed. 2004).

However, as this case involves a pro se plaintiff, this Court will only dismiss this matter if "it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." **Haines v. Kerner**, 404 U.S. 519, 520–21 (1972), citing **Conley v. Gibson**, 355 U.S. 41, 45–46 (1957).

## IV. Discussion

The defendant has moved to dismiss the claims on multiple grounds. The Court will analyze each cause of action in turn.

### A. The ADA Claim

As noted previously, the plaintiff alleges a multitude of discriminatory acts that took place between 2004 and 2011. The plaintiff alleges that ISG's first discriminatory act took place on April 19, 2004, when she filled out an ISG employment application that "ask(ed) disabled applicants to 'list and describe limitations.'" [Doc. 1 at 3]. The plaintiff contends that this is a per se violation of the ADA [*Id.*]. Next, the plaintiff contends that "subsequent to passing the post-offer physical exam in 2004, (she) met with two of ISG's Managers, Korbel and Robicky" [*Id.*]. The plaintiff avers that Manager Korbel told her that she would be put to work if she dropped her handicap classification, which was "witnessed by Union President Mark Glyptis" [Doc. 1 at 4]. Because the demand that the plaintiff remove her limitations from her employment application with ISG was never rescinded, the plaintiff alleges that this act constitutes a continuing violation of the ADA [*Id.*].

Further, the plaintiff argues that she was placed on a no-hire list as of 2011 in retaliation for prior legal actions, and that the defendant has hired others for positions for which this plaintiff has applied who have less experience [Doc. 1 at 5–6]. Finally, the plaintiff alleges numerous occasions when "the defendant (purportedly) did not engage in an interactive process with plaintiff regarding her ADA disability" [Doc. 1].

#### i. The Majority of the Plaintiff's ADA Claims are Time-Barred

The ADA, 42 U.S.C. § 12117(a),[4] "requires a claimant to file a charge with the

---

[4] The ADA incorporates the procedures set forth in the Civil Rights Act of 1991.

Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged unlawful employment practice, unless within that period the claimant had initially instituted proceedings with a state or local agency, in which case the charge must be filed with the EEOC within 300 days." **McCullough v. Branch Banking & Trust, Co.**, 35 F.3d 127, 131 (4th Cir. 1994). *See also* **Jones v. Calvert Group, Ltd.**, 551 F.3d 297, 300 (4th Cir. 2009) **Williams v. Giant Food Inc.**, 370 F.3d 423, 428 (4th Cir. 2004), and **Tinsley v. First Union Nat'l Bank**, 155 F.3d 435, 439 (4th Cir. 1998). West Virginia, the state where the alleged discriminatory acts took place and where the plaintiff sought employment, has the West Virginia Human Rights Commission as a Fair Employment Practices Agency per 29 C.F.R. § 1601.74. Thus, employees who are alleging disability discrimination in this state have 300 days to file, as United States District Judge Frederick P. Stamp, Jr. noted in **Haught v. Louis Berkman, LLC.**, 377 F. Supp. 2d 543, 552 (N.D. W.Va. 2005) (*citing* **Mohasco Corp. v. Silver**, 447 U.S. 807 (1980)). If a plaintiff in federal court has failed to meet this time limitation, then her action is barred. ***Id***.

It is the opinion of the Court that the plaintiff failed to meet the time limitation in this instant case, and the majority of her ADA claims are time-barred, including any and all claims for discrimination that occurred prior to October 15, 2010[5] including: (1) the plaintiff's claim that an ISG employment application that she filled out on April 19, 2004 "ask(ed) disabled applicants to 'list and describe limitations,'" was a per se violation of the ADA [Doc. 1 at 3]; (2) the plaintiff's claim that ISG Manager Korbel violated the ADA by telling her that she would be put to work if she dropped her handicap classification,

---

[5] The plaintiff filed her Notice of Charge of Discrimination on August 11, 2011 [Doc. 13-2 at 2]. Using the 300 day rule, any and all claims that occurred before Friday, October 15, 2010 are time-barred.

8

which was "witnessed by Union President Mark Glyptis" [Doc. 1 at 4]; (3) ISG's alleged failure to engage the plaintiff in an interactive process in the time before her 2004 employment application and up to October 15, 2010; (4) ISG and/or ArcelorMittal's purported failure to notify the plaintiff of employment openings between April 19, 2004 and October 15, 2010 [Doc. 1 at 3-7]; and (5) ISG's failure to send the plaintiff to additional physicians after taking her "post-offer physical examination" or "determine whether the plaintiff could meet the essential functions of any position with the defendant" between 2004 and October 15, 2010 [Doc. 1 at 4–5].

The plaintiff contends that ISG's failure to rescind its request for the plaintiff to drop her handicap classification constitutes a "continuing violation" of the ADA because the request was never rescinded [Doc. 1 at 4]. A finding of a "continuing violation" would remedy the time-bar that prohibits the plaintiff from maintaining many of her claims. *See* **AMTRAK v. Morgan**, 536 U.S. 101, 118 (2002) ("Given . . . that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim. In order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment.") However, that is certainly not the case here, and the Court finds that such ISG's purported request to the plaintiff, if true, would constitute a "discrete violation" from which the plaintiff may not benefit. *See* **Williams v. Giant Food, Inc.**, 370 F.3d 423, 429 (4th Cir. 2004) (". . . an employee must file a charge of discrimination within the appropriate limitations period as to each discrete act of discrimination that occurred." Such discrete acts of discrimination "are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.") (*citing* **Morgan**, 536 U.S. at 113). The plaintiff's claim that ISG refused to

9

hire her because she refused to drop her handicap classification also constitutes a "discrete act" that is time-barred in the instant suit, because "(d)iscrete acts such as. . . refusal to hire are easy to identify." *Id*. at 114.  For the foregoing reasons, the plaintiff's claims of discrimination under the ADA that allegedly occurred before October 15, 2010 and her claim of an ongoing violation of the ADA are time-barred and are hereby **DISMISSED**.

> ii. **The Plaintiff's Remaining Claims Fail to Meet the *Iqbal* and *Twombly* Pleading Standard**

The plaintiff's claim that she was "singled out for dismissive and harsh treatment" [Doc. 1 at 9] by the defendant is baseless, and the plaintiff has not alleged any facts to support such a conclusion.  This Court finds that the plaintiff's remaining ADA claims fail to satisfy the pleading requirements set forth in ***Iqbal*** and ***Twombly***.  The plaintiff alleges that she sent written notice on December 23, 2010 and February 3, 2011 to Susan Falbo, Manager of Labor Relations for defendant ArcelorMittal, asking that she be restored to employment in a "dust-free environment" or "noti[ifed] of job openings at the defendant's West Virginia facilities, [an accommodation which] Manager Falbo failed to provide" [Doc. 1 at 6].  The defendant alleges it did not reply to those requests until April 21, 2011, at which time the plaintiff was informed that the "Preferred Hire List" was eliminated in 2008 [Doc. 1 at 7].  As part and parcel of these relatively recent allegations, the plaintiff alleges that the "defendant did not respond to the plaintiff's May 5, 2011 bid or set up any kind of interactive process for the plaintiff" [Doc. 1 at 8].

"In order for a plaintiff to establish a *prima facie* case against (her) employer for failure to accommodate under the ADA, the plaintiff must show: '(1) that (she) was an individual who had a disability within the meaning of the statute; (2) that the employer

10

had notice of (her) disability; (3) that with reasonable accommodation (she) could perform the essential functions of the position. . .; and (4) that the employer refused to make such accommodations.'" **Wilson v. Dollar Gen. Corp.**, 717 F.3d 337, 345 (4th Cir. 2013) (*citing* **Rhoads v. FDIC**, 257 F.3d 373, 387 (4th Cir. 2001)).  However, "an employee cannot base a reasonable accommodation claim solely on the allegation that the employer failed to engage in an interactive process." **Walter v. United Airlines, Inc.,** 232 F.3d 892 (Oct. 25, 2000); *see also* **Scott v. Montgomery County Gov't**, 164 F. Supp. 2d 502, 508 (D. Md. 2001).  The employee must instead allege that the failure to engage in an interactive process "resulted in the failure to identify an appropriate accommodation for (the plaintiff)."  **Walter**, 232 F.3d at 892.

The plaintiff's remaining ADA claims regarding her re-hiring fail because the plaintiff has not alleged that her disability impacts her ability to engage in the application process in any way.  The plaintiff never alleged that her disability prohibited her from seeking job opportunities with the defendant, yet she demanded that the defendant provide her with "notice of job openings at defendant's West Virginia facilities" [Doc. 1 at 8].  Additionally, the plaintiff's claim that the defendant did not engage in an interactive process with regards to her bid for a "Placement Analyst" position in 2011 [*Id.*] is a bare assertion devoid of all merit.  The plaintiff does not allege that the defendant failed to meet a requested accommodation that would have allowed her to perform in the position, just that it passed her over for the job. That claim falls woefully short of the **Iqbal** and **Twombly** pleading standards, and warrants dismissal.

Finally, the plaintiff contends that the "defendant and its managers retaliated against (her) by reason of her ongoing ADA lawsuit against Weirton Steel" [Doc. 1 at 5 and 8].  Yet the alleged "retaliation" could have only stemmed from a lawsuit filed

against an entirely different defendant a full ten years prior to the plaintiff's latest employment application [Doc. 1-3].[6] To establish a claim for retaliation under the ADA, a plaintiff must allege "(1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in the protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." **Freilich v. Upper Chesapeake Health**, 313 F.3d 205, 216 (4th Cir. 2002).

However, "a lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action . . . negates any inference that a causal connection exists between the two." **Dowe v. Total Action Against Poverty in Roanoke Valley**, 145 F.3d 653, 657 (4th Cir. 1998). The Fourth Circuit gave an example of a "lengthy time lapse" when it held that "(a) thirteen month interval between the charge and termination is too long to establish causation absent other evidence of retaliation." **Causey v. Balog**, 162 F.3d 795, 803 (4th Cir. 1998). In the instant case, the plaintiff claims that "[i]n 2004, ISG and its managers were aware that plaintiff had an ongoing ADA lawsuit against Weirton Steel Corporation for disability discrimination," [Doc. 1 at 5] which would constitute the defendant's predecessor's awareness of a protected activity. The seven-year discrepancy between the defendant's 2004 awareness of that claim and the plaintiff's 2011 employment application obviously constitutes a "lengthy time lapse" that would bar a retaliation claim under the ADA. The plaintiff has not pled any other facts that would lead this Court to conclude that the defendant would be retaliating against Ms. Dunope for any other

---

[6]The plaintiff filed suit against Weirton Steel in the United States District Court for the Western District of Pennsylvania for a series of ADA claims on October 26, 2001 [Doc. 1-3 at 1]. That Court dismissed the suit in a memorandum order dated February 2, 2012 [*Id.*]. The Court has taken judicial notice of that filing in rendering this decision. See **Witthohn v. Fed. Ins.** Co. 164 Fed.Appx. 395, 396–97 (4th Cir. 2006).

reason. As such, the "lengthy lapse of time" and lack of a well-pled alternate claim for retaliation warrant dismissal of the plaintiff's ADA claim for retaliation against the defendant, and is hereby ordered **DISMISSED**.

### B. The ERISA Claim

Plaintiff argues that the defendant interfered with a promised lump sum payment under a Transition Benefit Plan when it failed to pay the lump sum after she was unsuccessful at gaining employment at the successor corporation, in violation of 29 U.S.C. § 1140 [Doc. 1 at 8–10]. The defendant counters that the plaintiff admittedly denied the offer to take the lump sum payout [Doc. 13 at 2–4; 21–22]. Thus, she cannot now claim entitlement to the benefit, nor has she stated an interference claim which would alternatively entitle her to relief [*Id.*].

Section 510 of ERISA makes it unlawful for an employer to discharge an ERISA plan participant "for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Section 510 "guarantees that no employee will be terminated where the purpose of the discharge is the interference with one's pension rights." **Conkwright v. Westinghouse Elec. Corp.**, 933 F.2d 231, 238 (4th Cir. 1991). The burden shifting framework for Title VII and ADEA cases, established in **McDonnell Douglas Corp. v. Green**, 411 U.S. 792 (1973), applies to Section 510 claims, and requires a plaintiff to establish a *prima facie* case of interference, which also requires a showing of specific intent on the part of the employer. *See also* **Conkwright**, 933 F.2d at 239.

Assuming, *arguendo*, that the "Transition Benefit Program" offered by International Steel Group to the former union represented employees of Weirton Steel is

13

a qualifying plan under Section 510,[7] the Court agrees with the defendant that there are no facts alleged in the Complaint which give rise to an interference claim. In the Complaint, the plaintiff alleges that the defendant offered, but failed to pay, the benefit promised, and did so for the purpose of interfering with her rights under the plan. However, the plaintiff also states that she "refused the Transition Benefit (buyout) in 2004 and on subsequent occasions." [Doc. 1 at ¶ 54]. The Transition Benefit Program clearly states that it was eligible for those who "decline employment with ISG following the purchase of Weirton by ISG" [Doc. 13-1].[8] It is axiomatic that a person can only claim entitlement to an ERISA plan if that person participates in the plan. Here, the plaintiff obviously elected to not participate in the plan, and elected to proceed to try and gain employment with the successor corporation instead. Accordingly, she has failed to state a claim for interference under ERISA. As such, the plaintiff's ERISA claims are hereby ordered **DISMISSED**.

### C. The West Virginia Human Rights Act Claims

Finally, the plaintiff claims that the "defendant's failure to hire Ms. Dunope violated the West Virginia Human Rights Act ("WVHRA"), specifically regarding disability discrimination and retaliation." [Doc. 1 at 10]. The plaintiff claims that as a direct result of this violation, she is entitled to lost wages and other economic benefits, plus compensation related to emotional distress, depression, inconvenience, and humiliation.

Like many of the plaintiff's ADA claims, the vast majority of her WVHRA claims

---

[7] It is questionable whether a buyout package such as this qualifies. *See, e.g.* **Angst v. Mack Trucks, Inc.**, 969 F.2d 1530 (3d. Cir. 1992).

[8] The Court has considered the "Transition Benefit Program" attached to the defendant's motion to dismiss because it is "integral to and explicitly relied on in the complaint," and the plaintiff has not responded to the motion to contest its authenticity. **Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.**, 367 F.3d 212, 234 (4th Cir. 2004).

are time-barred. A charge must be filed with the West Virginia Human Rights Commission within 365 days after the alleged act of discrimination. *See* W.Va. Code §§ 5-11-9(1), 5-11-13(a). In the instant case, the vast majority of the defendant's alleged acts of discrimination took place in 2004, yet the plaintiff did not file a charge with the West Virginia Human Rights Commission until August 11, 2011 [Doc. 13-2 at 2].[9] This means that any claims of discrimination for acts occurring before August 11, 2010 are time-barred. Therefore, any claims that the plaintiff has for discriminatory acts occurring before that date are time-barred and are **DISMISSED**.

The plaintiff's remaining allegations filed under the WVHRA fail to state claims upon which relief can be granted under the pleading standards of **Iqbal** and **Twombly**. Under the WVHRA, an employer may not discriminate against an individual through its hiring practices if the individual is able to perform the services required even if that individual is disabled. **Calef v. Fedex Ground Packaging Sys.**, 343 Fed. Appx. 891, 897 (4th Cir. 2009); *see also* W.Va. Code § 5-11-9(1). This Court has previously recognized that "to establish a prima facie case of disparate treatment under the WVHRA, an employee must establish that: (1) she was disabled or regarded as disabled on the date in question; (2) she was competent and able to perform the essential functions of his job, or she could have performed those functions with reasonable accommodation, which the employer failed to provide; and (3) the employer took an adverse action against her." **Garvin v. World Color Printing (USA) II Corp.**, 2011 WL 1485998 at *31 (N.D. W.Va. April 19, 2011).

Employers also have a duty to provide a reasonable accommodation for disabled individuals during the job application process. **Skaggs v. Elk Run Coal Co.**, 479 S.E.2d

---

[9]This Court has discussed the defendant's alleged 2004 acts of discrimination at length in the section of this opinion relating to the plaintiff's ADA claims.

15

561, 573 (W.Va. 1996).  This Court has also recognized that "to state a claim for breach of that duty, a plaintiff may prove the following elements: (1) The plaintiff is a qualified person with a disability; (2) The employer was aware of the plaintiff's disability; (3) The plaintiff required an accommodation in order to perform the essential functions of the job; (4) (a) reasonable accommodation existed that would meet the plaintiff's needs; (5) The employer knew or should have known of the plaintiff's needs and of the accommodation; and (6) The employer failed to provide the accommodation." **Garvin**, 2011 WL 1485998 at *24.  Under the WVHRA, a reasonable accommodation is a "reasonable modification or adjustment, determined on a case-by-case basis, which attempts to enable a disabled person to be hired to or to remain [in her] original position." **Calef v. Fedex Ground Packaging Sys., Inc.**, 2007 WL 2156604 at *25 (N.D. W.Va. July 26, 2007), aff'd. 343 Fed. Appx. 891 (4th Cir. 2009).  While a reasonable accommodation may include reassignment of the individual to a "vacant position," an employer is not required to create a new position or "displace other employees to accommodate a disabled employee." **Skaggs**, 479 S.E.2d at 579.

  This Court finds that the majority of the plaintiff's WVHRA claims should be dismissed on largely the same grounds as her ADA claims because she has failed to meet the **Iqbal** and **Twombly** pleading standards.  The plaintiff has not alleged that her disability impacts her ability to engage in the application process in any way.  The plaintiff also never contended that her disability prohibited her from seeking job opportunities with the defendant, yet she demanded that the defendant provide her with "notice of job openings at defendant's West Virginia facilities" [Doc. 1 at 8].  Additionally, the plaintiff's claim that the defendant did not engage in an interactive process with regards to her bid for a "Placement Analyst" position in 2011 [*Id.*] is a bare assertion

16

devoid of merit. The plaintiff does not allege that the defendant failed to meet a requested accommodation that would have allowed her to perform in the position, just that they passed her over for the job.

For the foregoing reasons, the vast majority of the plaintiff's claims under the WVHRA are time-barred and are therefore **DISMISSED**. The plaintiff's remaining WVHRA claims fail to state a claim upon which relief can be granted under the *Iqbal* and *Twombly* pleading standards, and are also **DISMISSED** for the foregoing reasons.

### V. Conclusion

For the foregoing reasons, this Court hereby **GRANTS** defendant ArcelorMittal Steel's Motion to Dismiss **[Doc. 12]**. Also pending before this Court are three motions filed by the defendant: (1) a Third Party Motion for Leave to Appear Pro Hac Vice **[Doc. 22]**; (2) a Motion for Leave to Appear Pro Hac Vice **[Doc. 23]**; and (3) a Motion for Hearing on Scheduling Conference and Report of Parties' Planning Meeting and Discovery/ Case Management Plan **[Doc. 24]**. Given the Court's disposition as to the instant Motion to Dismiss, these motions are hereby **DENIED AS MOOT**. Accordingly, this action is hereby **ORDERED STRICKEN** from the active docket of this Court. The Clerk is **DIRECTED** to enter judgment in favor of the defendant.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* plaintiff.

**DATED:** August 13, 2013.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE